*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

REV. DR. MARCUS L. LOVELACE,

        Plaintiff-Appellant,

v

MT. ZION BAPTIST CHURCH,
CLEOTHA SIMS, JAMES COOLEY,
JAMES TWYMAN, and MARGIE
BRAXTON,

        Defendants-Appellees.

UNPUBLISHED
July 15, 2026
11:45 AM

No. 371028
Wayne Circuit Court
LC No. 22-005770-CZ

Before: RICK, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

In this employment dispute, plaintiff, the former senior pastor of defendant, Mt. Zion Baptist Church (the church), appeals as of right the trial court's orders dismissing his case. We affirm.

## I. FACTUAL BACKGROUND

This case arises from the church's decision to terminate plaintiff as its senior pastor. Before plaintiff began his tenure, the church's executive board, consisting of defendants Cleotha Sims, James Cooley, James Twyman, and Margie Braxton, began searching for a new senior pastor after the position had been vacant for three years. Plaintiff applied, as did several other candidates. Plaintiff alleges that the individual defendants opposed his candidacy and supported another candidate. Nevertheless, the congregation voted to elect plaintiff as senior pastor.

Plaintiff and the church entered into an employment agreement in September 2021. Twyman signed the agreement on behalf of the church as chairman of the deacon board. Cooley, a trustee, also signed the agreement. The agreement included a signature line for Braxton, also a trustee, but she did not sign. Sims was not a signatory. The employment agreement gave plaintiff broad authority to lead the church as the "shepherd and overseer of all day-to-day operations and administration of the church." The church's leadership agreed to "work in conjunction with him to accomplish his vision that he has laid out for the growth of the church." The agreement also

provided that the church could terminate the agreement for cause if plaintiff committed "any serious offense which would constitute a felony under the law." The agreement further provided that the church could terminate plaintiff's employment for reasons other than cause following a vote of the church's members.

The relationship between plaintiff and defendants deteriorated soon after plaintiff began serving as senior pastor. Plaintiff alleged that he discovered irregularities in the church's finances. Plaintiff also began making changes to the church's leadership and personnel, which he believed fell within the broad authority granted to him in his employment agreement. At a church service in March 2022, Braxton announced that there would be a special meeting on April 2, 2022, to discuss plaintiff's alleged abuse of power. The meeting agenda included motions to reverse some of plaintiff's personnel changes and some of his changes to the church's financial accounts. At a second meeting on April 9, 2022, the church members present voted to dismiss plaintiff as pastor and cancel his employment contract.

Plaintiff then filed this action. He alleged breach of contract against the church (Count I), intentional interference with contractual relations against the individual defendants (Count II), and defamation and defamation per se against the individual defendants (Count III).

In lieu of an answer, defendants moved for summary disposition of all claims under MCR 2.116(C)(8) (failure to state a claim) and MCR 2.116(C)(10) (no genuine issue of material fact). Defendants argued that the decision to terminate plaintiff was ecclesiastical and that the court could not second-guess the church's internal decisions. Because all three claims arose from plaintiff's employment and duties as pastor, defendants argued that the complaint should be dismissed in its entirety under the ecclesiastical abstention doctrine. The trial court entered a written order denying defendants' motion for summary disposition with prejudice under MCR 2.116(C)(4) (court lacks subject-matter jurisdiction)[1] and (C)(8), and denying the motion without prejudice under MCR 2.116(C)(10).

After discovery closed, defendants filed a second motion for summary disposition, this time under MCR 2.116(C)(7) (immunity granted by law) and (C)(10). Defendants again argued that plaintiff's claims could not be adjudicated by a civil court because they were barred by the ecclesiastical abstention doctrine. Defendants also argued that plaintiff's exclusive forum to challenge the merits of the termination decision was the April 9, 2022 congregational meeting. At the hearing, the trial court reasoned that the breach-of-contract claim would require the court to decide internal matters of church policy, which it could not do. The court concluded, however, that the tort claims against the individual defendants were not barred by the ecclesiastical abstention doctrine.

The matter was scheduled for trial. Before trial, defendants filed a motion in limine that largely repeated the arguments raised in their summary-disposition motions and asked the court to dismiss Counts II and III under the ecclesiastical abstention doctrine. Regarding tortious

---

[1] Defendants filed a motion for reconsideration arguing, in part, that they did not move for summary disposition under MCR 2.116(C)(4) and so the court should not have included this in its opinion, but the court denied the motion.

interference, the trial court concluded that plaintiff would have to show either a per se wrongful act or a lawful act done with malice and without legal justification. The court further concluded that, even if plaintiff could establish intentional interference, it would have to decide issues concerning the church's authority, which it once again could not do. The court therefore dismissed Count II. The court also dismissed plaintiff's defamation claim, reasoning that the statement that plaintiff abused his power was opinion and therefore not actionable. The court further reasoned that the statements were made only during the church meeting held to decide whether plaintiff's employment should be terminated and were therefore barred from civil review by the ecclesiastical abstention doctrine. Finally, the court concluded that plaintiff was a public figure and that he could not show the requisite malice, and it dismissed the last of plaintiff's claims. This appeal followed.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

We review issues of constitutional law de novo. *Winkler by Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 333; 901 NW2d 566 (2017). We also review de novo the interpretation of a contract. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

We likewise review a trial court's decision to grant or deny a motion for summary disposition de novo. *Id*. The trial court dismissed Count I of plaintiff's complaint under MCR 2.116(C)(10). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). When reviewing a motion brought under MCR 2.116(C)(10), the trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed or submitted by the parties in the light most favorable to the nonmoving party. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the moving party meets its initial burden, "[t]he burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id*. When the nonmoving party has the burden of proof at trial, it must submit evidence that demonstrates a genuine issue of material fact exists and may not rest on mere allegations or denials in the pleadings. *Id*. at 362-363. "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id*. at 363. In other words, "[i]f no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether summary disposition is proper is a question of law for the Court." *Estate of Miller v Angels' Place, Inc*, 334 Mich App 325, 330; 964 NW2d 839 (2020).

The trial court dismissed Counts II and III of the complaint when deciding a motion in limine, but the court also indicated on the record that it was doing so as the trier of fact. "A trial court's decision on a motion in limine is reviewed for an abuse of discretion." *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 347 Mich App 533, 550; 15 NW3d 356 (2023). When the inquiry involves the proper application of legal principles, this aspect of the decision is reviewed de novo. *Id*.

"A trial court's findings of fact in a bench trial are reviewed for clear error while its conclusions of law are reviewed de novo." *Midwest Valve & Fitting Co v Detroit*, 347 Mich App 237, 250; 14 NW3d 826 (2023), aff'd on other grounds 516 Mich 909 (2024).

-3-

## B. BREACH OF CONTRACT

Plaintiff argues that the trial court erred by dismissing his breach-of-contract claim under the ecclesiastical abstention doctrine. We disagree.

The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." US Const, Am I. "The First Amendment applies to the states through the Fourteenth Amendment." *Weishuhn v Catholic Diocese of Lansing*, 279 Mich App 150, 156; 756 NW2d 483 (2008). The Michigan Constitution likewise guarantees freedom of worship and religious belief. See Const 1963, art 1, § 4. The Michigan Constitution is "at least as protective of religious liberty as the United States Constitution." *Winkler*, 500 Mich at 337 n 4 (quotation marks and citation omitted).

The ecclesiastical abstention doctrine "arises from the Religion Clauses of the First Amendment of the United States Constitution." *Id*. at 337. The doctrine provides that it would be

> inconsistent with complete and untrammeled religious liberty for civil courts to enter into a consideration of church doctrine or church discipline, to inquire into the regularity of the proceedings of church tribunals having cognizance of such matters, or to determine whether a resolution was passed in accordance with the canon law of the church, except insofar as it may be necessary to do so, in determining whether or not it was the church that acted therein. [*Id*. at 337-338 (quotation marks and citation omitted).]

Under the ecclesiastical abstention doctrine, courts have consistently held that "judicial interference in the purely ecclesiastical affairs of religious organizations is improper." *Id*. at 338 (quotation marks and citation omitted).

The ecclesiastical abstention doctrine provides that civil courts are "severely circumscribed by the First and Fourteenth Amendments to the United States Constitution and art 1, § 4 of the Michigan Constitution of 1963 in resolution of disputes between a church and its members." *Pilgrim's Rest Baptist Church v Pearson*, 310 Mich App 318, 323; 872 NW2d 16 (2015) (quotation marks and citation omitted), overruled in part by *Winkler*, 500 Mich at 337-340.[2] Additionally, when a pastor sues a church based on his employment contract and "the claim involves the provision of the very services . . . for which the organization enjoys First Amendment protection,

---

[2] In *Pilgrim's Rest*, this Court characterized the ecclesiastical abstention doctrine as a limitation on the subject matter jurisdiction of civil courts. *Pilgrim's Rest*, 310 Mich App at 323-324. However, in *Winkler*, the Supreme Court clarified that the ecclesiastical abstention doctrine does not limit a civil court's subject matter jurisdiction because it is not determined by reference to the category or class of the case the plaintiff has stated but rather it "requires a case-specific inquiry that informs how a court must adjudicate certain claims within its subject matter jurisdiction; it does not determine whether the court has such jurisdiction in the first place." *Winkler*, 500 Mich at 341.

then any claimed contract for such services likely involves its ecclesiastical policies, outside the purview of civil law." *Id*. at 324 (quotation marks and citation omitted).

Although the doctrine requires civil courts to defer to religious bodies on ecclesiastical questions, it does not completely deprive civil courts of subject-matter jurisdiction over such cases. *Winkler*, 500 Mich at 337-338. However, if "the actual adjudication of a particular legal claim would require the resolution of ecclesiastical questions . . . the court must abstain from resolving those questions itself, defer to the religious entity's resolution of such questions, and adjudicate the claim accordingly." *Id*.

The related "ministerial exception" to employment-discrimination law "has its roots in the First Amendment's guarantees of religious freedom and, generally, it bars any inquiry into a religious organization's underlying motivation for [a] contested employment decision." *Weishuhn*, 279 Mich App at 157 (citations and quotation marks omitted). The exception bars employment-discrimination claims based on federal civil-rights statutes and related common-law claims. *Id*.

To prove his breach-of-contract claim, plaintiff had to establish: (1) there was a contract, (2) defendants breached the contract, and (3) the breach resulted in damages. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). In response to defendants' second motion for summary disposition, plaintiff asserted two theories of breach: "First, by organizing, announcing, and holding the April 2 and 9, 2022 meetings in violation of the Contract. Second, by terminating [plaintiff's] employment for actions that were well within the scope of his contractual rights." Under *Winkler*, the question is whether adjudicating either theory would require a civil court to resolve ecclesiastical questions reserved to the church. Both theories would require that inquiry, and the trial court properly abstained.

We first address plaintiff's second theory, namely that the church breached the agreement by terminating him for actions he was contractually permitted to take. This theory would require a civil court to decide whether church leadership correctly concluded that plaintiff had "abused his authority" when he took actions that he believed were within his authority as the "shepherd and overseer of all day-to-day operations and administration of the church." That inquiry would require the court to decide questions of church governance and authority. "Under the ecclesiastical abstention doctrine, apparently derived from both First Amendment religion clauses, civil courts may not redetermine the correctness of an interpretation of canonical text or some decision relating to government of the religious polity." *Smith v Calvary Christian Church*, 462 Mich 679, 684; 614 NW2d 590 (2000) (citation and quotation marks omitted; emphasis added). The church, not a civil court, must decide how it will organize itself and how much authority its senior pastor may exercise over religious and secular affairs. The church's leadership and members made that decision here, and we will not disturb it.

This theory also fails for a more basic reason. Plaintiff's argument assumes that he could not be terminated if he acted within the authority granted by the employment agreement. But the agreement permitted the church to terminate plaintiff for cause *and* for reasons other than cause, provided that certain procedural requirements were met. The church therefore did not breach the agreement merely by terminating plaintiff for actions that he believed were within the agreement's grant of authority.

Plaintiff's other theory, that the church breached the agreement by terminating him without following the process required for termination without cause, presents a closer question. Plaintiff relies in part on *Vincent v Raglin*, 114 Mich App 242; 318 NW2d 629 (1982), which he contends is factually analogous. In *Vincent*, a pastor sued church deacons and trustees for conspiring to deprive him unlawfully of the economic benefits of his pastorate after a rift developed in the church. *Id*. at 245-246. At the close of the plaintiff's proofs, the trial court entered a directed verdict for the defendants, holding that the separation of church and state barred judicial review of the plaintiff's claims. *Id*. at 246. This Court reversed, holding that civil courts had a duty to determine when, if ever, the church terminated the plaintiff's duties as pastor. *Id*. at 247. The Court remanded for a jury to determine whether the vote, which apparently included both members and nonmembers, constituted an action of the church under the church's governing documents. *Id*. at 249. The Court emphasized, "once again, that a controversy involving a church is not immune from judicial review unless adjudication of the controversy would require an assessment of the propriety of an action by the church." *Id*. at 252.

But later decisions have made clear that *Vincent*'s holding is limited. In *Vincent*, the Court held that civil courts could determine whether a church had actually terminated a pastor. *Pilgrim's Rest*, 310 Mich App at 324. When a party asks a civil court to determine whether a church exceeded its authority in firing a clergyman, the question is "nonjusticiable because it would require the court to determine if the church violated its own policy." *Id*.

Here, plaintiff asks us to determine that the church and its leadership exceeded their authority when they called the April 2022 meetings to discuss his future as senior pastor and invited guest pastors to oversee those meetings despite (1) the requirement in the employment agreement that church leadership work with the pastor to accomplish his vision, (2) the provision giving the pastor responsibility for the functioning of the church, and (3) the provision that no person could be invited to speak, preach, teach, or minister in any fashion at any service or meeting without plaintiff's approval. Under the ecclesiastical abstention doctrine, a civil court may not decide those questions because it would generally be inconsistent with religious liberty for civil courts to "inquire into the regularity of the proceedings of church tribunals having cognizance of such matters, or to determine whether a resolution was passed in accordance with the canon law of the church." *Winkler*, 500 Mich at 338 (quotation marks and citations omitted). Plaintiff does not dispute that the church acted to terminate his employment. He disputes whether the church and its leadership exceeded their authority in doing so. That question is not for the courts.

Nor can this dispute be resolved through neutral principles of contract law. Plaintiff argues that the trial court could have interpreted the termination provisions of his contract without deciding matters of religious doctrine. But plaintiff also identifies ambiguities in the termination provision itself. Specifically, the terms "the congregation of the church," "Church Body," and "eligible members" all appear in the provision governing termination for reasons other than cause, and none is defined.

Twyman testified that, to become a member of the church, a person needed only to acknowledge that he or she wanted to become a member. He also testified that a "prior discussion was held as it relates to whether [a] person is an actual member" for voting purposes, and those discussions involved whether the person had recently attended the church and whether the person financially supported the church. Church leadership decided "if there was no visitation from the

member or gifts given within 90 days of that, of a certain time, he wouldn't be eligible to be considered as a member."

Plaintiff seeks a remand so that a civil court can determine whether the " 'the congregation of the church' or the 'Church Body' wished to terminate his employment without cause" under the termination provision. But answering that question would require the court to decide matters at the center of the church's organization and mission: who is a member of the church, whether a profession of faith is required, which religious tenets a prospective member must accept, whether baptism or another act is required for membership, whether only a subset of members may vote on matters affecting the church's future, and what qualities define that subset. Civil courts may not answer those questions without intruding on the church's religious liberty. See *White v Mount Beulah Baptist Church*, 319 Mich 392, 394; 29 NW2d 774 (1947) (reversing the trial court's order outlining a process wherein the court would have determined the membership of the church for the purposes of a church election). See also *Berry v Bruce*, 317 Mich 490, 498; 27 NW2d 67 (1947) (reversing the trial court's order which directed that a church meeting be held and determined who would be permitted to take part in the meeting).

In short, even the seemingly straightforward question whether the termination process in plaintiff's employment agreement was followed cannot be answered here through neutral legal principles without infringing on the religious liberty of the church and its members. Accordingly, the trial court correctly dismissed Count I.

## C. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

Plaintiff next argues that the trial court erred by dismissing his claim for intentional interference with contractual relations. We disagree.

To prove tortious interference with a contract or contractual relations, a plaintiff must demonstrate "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant, resulting in damage to the aggrieved party to the contract." *Int'l Outdoor, Inc v SS Mitx, LLC*, 349 Mich App 212, 237; 27 NW3d 365 (2023) (quotation marks and citation omitted). As to the second element, "the element of breach may be demonstrated by showing that the defendant induced or otherwise caused nonperformance of the contract." *Id*. (quotation marks and citation omitted). Regarding the third element,

> the party alleging tortious interference with a contractual relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights of another. If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference. [*Id*. at 237-238 (quotation marks and citations omitted).]

But a plaintiff cannot maintain a tortious-interference claim against a party to the contract. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 382; 689 NW2d 145 (2004). Thus, "the plaintiff must establish that the defendant was a 'third party' to the contract rather than an agent of one of the parties acting within the scope of its authority as an agent." *Lawsuit Fin, LLC v Curry*, 261 Mich App 579, 593; 683 NW2d 233 (2004). Corporate agents are not liable for

tortious interference with the corporation's contracts unless they acted solely for their own benefit with no benefit to the corporation. *Reed v Mich Metro Girl Scout Council*, 201 Mich App 10, 13; 506 NW2d 231 (1993).

That threshold requirement is dispositive here. Plaintiff's employment agreement was between himself and the church. The individual defendants were not strangers to that contractual relationship. Twyman signed the agreement on behalf of the church as chairman of the deacon board, and Cooley signed the agreement as a trustee. Although Sims did not sign the agreement, and Braxton's signature line was left unsigned, plaintiff's claim is based on actions the individual defendants allegedly took as church officers, trustees, deacons, or members of church leadership. Plaintiff alleged that the individual defendants opposed his leadership, organized or participated in the April 2022 church meetings, sought to reverse his personnel and financial decisions, and placed before the congregation the question whether he should continue serving as senior pastor. Those allegations concern actions taken through the church's internal leadership structure and congregational process in connection with the church's own decision whether to continue its contractual relationship with plaintiff. On those facts, plaintiff cannot establish that the individual defendants were third parties to the church's employment agreement.

Nor has plaintiff established that the individual defendants acted solely for their own benefit and with no benefit to the church. *Id*. at 13. Plaintiff alleged that the individual defendants opposed his candidacy, disagreed with his decisions as senior pastor, and sought to undo actions that he believed were within his contractual authority. But those allegations do not establish that the individual defendants acted solely for private benefit. At most, they show a dispute between plaintiff and church leadership over who had authority to govern the church's affairs and whether plaintiff should remain the church's senior pastor. To the extent plaintiff argues that the individual defendants acted outside their authority or for illegitimate reasons, that argument would require a civil court to decide whether the individual defendants' actions were proper under the church's internal governance structure and whether their stated concerns about plaintiff's leadership were legitimate. Those are precisely the types of ecclesiastical questions civil courts may not decide. See *Winkler*, 500 Mich at 341.

For similar reasons, plaintiff cannot avoid dismissal by focusing on the remaining elements of tortious interference. To establish breach, plaintiff would have to show that the church failed to comply with the employment agreement when it terminated him. As already explained, even the narrow question whether the termination procedure was properly followed cannot be answered here through neutral principles of law because it would require a civil court to decide who qualified as an eligible church member and whether the church's internal meeting and voting procedures were valid. And to establish unjustified interference, plaintiff would have to show that the individual defendants acted with malice and without legal justification when they sought his removal. That inquiry would require a civil court to decide whether the individual defendants were justified in believing that plaintiff had abused his authority and should no longer lead the church. Under the ecclesiastical abstention doctrine, that question belongs to the church, not the courts.

Accordingly, plaintiff's tortious-interference claim fails because he cannot establish that the individual defendants were third parties to the employment agreement. And even if plaintiff could satisfy that threshold requirement, adjudicating the breach and justification elements of his claim would require the resolution of ecclesiastical questions. Plaintiff's claim thus fails.

## D. DEFAMATION

Finally, plaintiff argues that the trial court erred by dismissing his defamation claim, either for failure to state a claim or under the ecclesiastical abstention doctrine. We disagree.

Under Michigan law, there are four basic elements of a defamation claim:

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. [*Ghanam v Does*, 303 Mich App 522, 544; 845 NW2d 128 (2014) (citations and quotation marks omitted).]

To state a claim for defamation, a plaintiff must "plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory." *Sarkar v Doe*, 318 Mich App 156, 184; 897 NW2d 207 (2016) (quotation marks and citation omitted).

A statement is defamatory "if it tends to lower an individual's reputation in the community or deter[] third persons from associating or dealing with that individual." *Reighard v ESPN, Inc*, 341 Mich App 526, 538; 991 NW2d 803 (2022) (quotation marks and citation omitted). But "[i]f a statement cannot be reasonably interpreted as stating actual facts about the plaintiff, it is protected by the First Amendment." *Id*. (quotation marks and citation omitted). Thus, "at least some expressions of opinion are protected." *Id*. (quotation marks and citation omitted). To be defamatory, the statement must assert facts that are "provable as false." *Sarkar*, 318 Mich App at 179.

Plaintiff alleged the following in support of his defamation claim: "During the April 2, 2022 meeting, Mr. Sims, Mr. Cooley, Ms. Braxton, Mr. Twyman, and perhaps others, falsely accused Pastor of Lovelace [sic] of 'abusing his power' by '[a]ttempting to gain access to [Church bank accounts] on Friday, March 18, 2022.' " The trial court concluded that plaintiff failed to state a defamation claim because the allegation was constitutionally protected opinion. The trial court also concluded that, because plaintiff was a public figure, his claim failed for the additional reason that he could not prove actual malice.

We do not agree with the trial court's reasoning that the allegedly defamatory statement was not provable as false. Plaintiff's defamation theory is that the individual defendants stated that he lacked authority to access the church's bank accounts, and that this statement was false because his employment agreement gave him broad authority over the church's spiritual and secular affairs. At least in theory, one could determine whether that statement was true or false by examining whether the employment agreement granted plaintiff that authority.

For the statement to be actionable, however, a civil court would have to determine that it was false. *Ghanam*, 303 Mich App at 544. The statement at issue, namely that plaintiff exceeded his authority as senior pastor under the employment agreement, would be provable as false only if the trial court parsed the agreement and determined which powers belonged to the senior pastor. As explained, the trial court could not review the scope of plaintiff's authority under the employment agreement because "civil courts may not redetermine the correctness of . . . some

-9-

decision relating to government of the religious polity." *Smith*, 462 Mich at 684 (emphasis added; quotation marks and citation omitted). Plaintiff maintains that the agreement authorized him to access the church's bank accounts. Church leadership maintained that it did not. That dispute concerns church polity, and it must be resolved by the church. *Holt v Trone*, 341 Mich 169, 174; 67 NW2d 125 (1954) ("In matters of church polity purely ecclesiastical[,] civil courts do not interfere . . . .") (citation and quotation marks omitted).

Accordingly, although we do not agree with the trial court's conclusion that the allegedly defamatory remarks in paragraph 57 of plaintiff's complaint were not capable of defamatory meaning, the court reached the correct result. To determine whether plaintiff abused his authority, the trial court would have had to determine whether plaintiff was authorized to access the church's bank accounts under the employment agreement. That determination would impermissibly intrude on matters of church organization and polity. Because "this Court does not reverse a lower court's decision where it reached the right result for a wrong reason," we affirm the trial court's decision. *Hawkins v Dep't of Corrections*, 219 Mich App 523, 528; 557 NW2d 138 (1996).

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Stephen L. Borrello